In re MARRIAGE OF DEBORAH GEBIS, Respondent-Appellant, and GARY GEBIS, Petitioner-Appellee.

First District (3rd Division)    No. 80-1508

Opinion filed September 30, 1981.

Synek, Bishart & Porikos, of Chicago (Henry Thrush Synek, of counsel), for appellant.

Stanley F. Kaplan, P. C., of Chicago (Claire Adair, of counsel), for appellee.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Petitioner, Gary Gebis, filed a petition to obtain custody of his two minor children from respondent, Deborah Gebis. After hearing evidence in support of the petition, the trial court awarded temporary custody to petitioner without prejudice to the rights of respondent. After all of the evidence had been presented by both parties, the trial court transferred permanent custody of the two children to petitioner. We reverse.

The parties were married on September 3, 1972. Two children were born during the marriage. William was born on July 28, 1973, and Gary was born on February 7, 1975. On December 18, 1978, a judgment of dissolution of marriage was entered. Pursuant to a settlement agreement which was incorporated in the judgment, respondent was given custody of the two minor children subject to the visitation rights of petitioner.

On December 27, 1979, petitioner filed a petition in which he requested temporary custody of the children until a full hearing could be held and permanent custody at the conclusion of a full hearing. In the

petition, he alleged that the custodial arrangement seriously endangered the children's physical, mental, moral and emotional health and that it would be in the best interest of the children to reside with petitioner and his new wife.

At the conclusion of the hearing, the trial court entered an order transferring permanent custody of the two children to petitioner. The court found that the testimony of Michelle Cimino, director of a nursery school, as to the clothing and hygienic condition of Gary, respondent's inaction as it related to William's speech problem and the other evidence submitted at the hearing showed that the children's present environment seriously endangered their physical, moral and emotional health. The court further found that there had been a substantial change of circumstances relative to the welfare of the children, and that it would be in the best interest of the children to have permanent custody transferred to petitioner. The court ordered that respondent was to have the same visitation rights which respondent had been given in the judgment for dissolution of the marriage.

Respondent contends that the order of the trial court transferring custody of the children to petitioner is against the manifest weight of the evidence. She argues that the evidence does not support a finding that the children's environment seriously endangered their physical, mental, moral or emotional health.

Section 610(b) of the Illinois Marriage and Dissolution of Marriage Act is relevant here. It provides:

"(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioner with consent of the custodian; or

(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him."

Ill. Rev. Stat. 1979, ch. 40, par. 610(b).

Petitioner has the burden of proof (*Applegate v. Applegate* (1980), 80 Ill. App. 3d 81, 84, 399 N.E.2d 330, 333) and must satisfy one of the three prerequisites under section 610(b) before the court proceeds to consider the best interest of the children under section 602(a) of the Act. (*In re*

*Marriage of Gargus* (1981), 97 Ill. App. 3d 598, 605-06, 423 N.E.2d 193, 198; *In re Marriage of Batchelor* (1980), 89 Ill. App. 3d 781, 784, 412 N.E.2d 49, 52; *In re Custody of Nodot* (1980), 81 Ill. App. 3d 883, 891, 401 N.E.2d 1189, 1195.) In this regard, section 610(b) reflects an underlying policy favoring the finality of child custody judgments. By creating a presumption in favor of the custodian appointed pursuant to the prior judgment, the legislature has sought to promote stability and continuity in the child's custodial and environmental relationship which is not to be lightly overturned. *In re Custody of Harne* (1979), 77 Ill. 2d 414, 420-21, 396 N.E.2d 499, 502; *In re Marriage of Gunter* (1981), 93 Ill. App. 3d 1043, 1048, 418 N.E.2d 149, 153.

Here, we agree with respondent that petitioner has failed to satisfy subsection (b)(3), the applicable subsection in the case. The evidence fails to support a finding that the children's environment seriously endangered their physical, mental, moral or emotional health. The incidents cited by petitioner, taken alone or together, do not warrant a change of custody from respondent, the custodian appointed in the original judgment.

In the order transferring custody, the trial court points to Cimino's testimony regarding Gary's clothing and hygiene. We do not believe that the fact that on occasion a four-year-old child wore dirty clothes or soiled his pants seriously endangers his physical, mental, moral or emotional health. Moreover, Cimino testified that it was not unusual for children in Gary's age group to get dirty or to have accidents. Nor do we believe that the fact that Gary may have had gum on his face for a few days seriously endangered him so as to justify a change of custody.

The older child, William, has a speech problem which is apparently hereditary. The trial court lists respondent's inaction with regard to William's speech problem as a finding supporting its ruling. However, we cannot conclude that the manner in which respondent handled the situation seriously endangered William. Respondent had taken William to a speech pathologist in November of 1978. The report of the speech pathologist indicated that speech therapy was not necessary at that time but that he should be reevaluated when he started kindergarten. Apparently, there was some confusion as to the time for reevaluation since William was already in kindergarten when he was first examined by the speech pathologist. Respondent received a letter clarifying the situation on January 2, 1980. The letter stated that the speech pathologist intended to recommend that William be reevaluated in the fall of 1979. Respondent then scheduled an appointment with the speech pathologist on January 4, 1980. While petitioner had temporary custody of the children, William began a program of speech therapy. We do not believe that the delay from the fall of 1979 to the early part of 1980 seriously endangered

William, and we assume that, if necessary, he will continue a program of speech therapy.

Petitioner argues that respondent's failure to take Gary to the dentist for follow-up treatment for a broken tooth demonstrates her lack of concern. However, respondent testified that she had scheduled several appointments which had to be cancelled because of illness or because petitioner had custody of the children. Moreover, there is no evidence that the missed appointments seriously endangered Gary's physical, mental, moral or emotional health.

Petitioner also points to testimony showing that respondent sometimes left her children with babysitters. One babysitter watched William before and after school. It was necessary for respondent to be at work during those hours, and we cannot say that this arrangement was detrimental to William. Another babysitter took care of the children approximately one night a week, and the children sometimes stayed overnight at her house. The evidence does not demonstrate that the children were seriously endangered while in the babysitter's care. Petitioner points to one incident in which William injured his leg on the babysitter's bike. We see this as nothing more than an accident which could not justify a transfer of custody. We also note that petitioner never objected to this particular babysitter while the parties were married.

In addition, we are unable to say that respondent's past financial problems seriously endangered the children. Furthermore, respondent has remarried, her current husband earns in excess of $30,000 per year, and she and her husband are living in a house.

After a careful examination of the record, we conclude that the evidence was insufficient to establish that the children's physical, mental, moral or emotional health was seriously endangered by their environment. Lacking this evidence, there was an insufficient basis on which to modify the existing custody arrangement. We conclude that the trial court's finding was against the manifest weight of the evidence, and the order transferring custody of the children was improper.

Accordingly, the order of the circuit court is reversed.

Reversed.

McNAMARA and McGILLICUDDY, JJ., concur.